

# COURT OF APPEALS

## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-09-00264-CR

RUBEN DOMINGUEZ                                                    APPELLANT

V.

THE STATE OF TEXAS                                                       STATE

----------

FROM THE 297TH DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

After the trial court denied Appellant Ruben Dominguez's motion to suppress evidence, Appellant entered his plea of guilty to the murder of Jasmine Payne with a firearm, and the jury assessed punishment at fifty-five years' confinement. The trial court sentenced Appellant accordingly. He appeals the denial of his motion to suppress the evidence acquired as a result of the search warrant for evidence located in the house he shared with his parents and his

---

[1]See Tex. R. App. P. 47.4.

brother, Jose. Because we hold that the trial court committed no reversible error, we affirm the trial court's judgment.

On February 13, 2008, Appellant and Henry Venegas went to a store located next to the Durango Body Shop. When they stopped near the store, a man approached them and tried to sell them a nine-millimeter firearm. Appellant was interested in buying another gun, so he showed the man his own Glock nine-millimeter handgun to see if the gun the man had was the same. During the conversation, Appellant and Venegas remained in Appellant's vehicle.

Appellant handed his Glock to the man for his inspection, but after the man started "getting mad and aggressive," Appellant asked for his gun back. Appellant opened his car door and began to get out of the car, but the man shut the car door and ran away with Appellant's gun. Appellant got out of the car and ran after him but turned back after the man ran to a house from which a number of people emerged. Later that night, Appellant went to the home of Ader Sotomayor, who worked at the body shop, and told Sotomayor about what had happened, describing the man to him. From Appellant's description, Sotomayor identified the man as Payne. Sotomayor told Appellant that Payne was "always around that area" where the body shop was located.

The next day, Sotomayor called Appellant when he saw Payne near the shop. Appellant arrived, confronted Payne, and, after arguing with him, shot him with a .380 caliber pistol. Appellant testified that Payne had threatened to shoot him with the Glock that he had taken from Appellant and then began to reach for

2

something behind his back. After shooting Payne, Appellant drove to Venegas's house and asked him to dispose of the .380 caliber pistol.

Venegas put the pistol in a dresser. After Appellant's sister informed him of Appellant's arrest and told him to get rid of the gun, Venegas wrapped the gun in a sock and hid it underneath an abandoned house. The police later came to Venegas's house and told him that they knew he had the gun, and Venegas took them to where he had hidden it.

The police applied for a search warrant, and Fort Worth Detective F. Serra III executed a supporting affidavit. In the affidavit, Serra described his interview with Sotomayor and his identification of Appellant. The affidavit states that Sotomayor had said that "Jose Dominguez" told him that Payne had stolen his gun. The affidavit also states that Sotomayor also said that this person's nickname was "Sito" and that Sito had dated his wife's cousin. An officer from the gang unit provided Serra with a picture of Appellant, which showed that Appellant had a tattoo on one wrist with the word "Sito." Sotomayor identified Appellant from a photospread and identified him as Sito. Serra concluded his affidavit with the following statements:

14. Your affiant obtained an arrest warrant for the suspect and he was taken into custody by Fort Worth Fugitive Officers at 2809 Berryhill where he resides with his parents.

15. Your affiant has reason to believe that the suspect may have concealed the suspect weapon and other evidence inside his residence.

3

Officers executed the search warrant and found the magazine for a Glock nine-millimeter in Appellant's bedroom. The door to his bedroom had the word "Sito" on it.

Appellant filed a motion to suppress all evidence seized as a result of his arrest and the search of his home. Appellant argued that the search warrant was illegally issued because the supporting affidavit did not reflect sufficient probable cause. At a pretrial hearing, Appellant argued that the affidavit was conclusory and did not show probable cause and that Serra gave "no facts or circumstances within his knowledge that would support a reason . . . as to why he believes that the suspect may have concealed the weapon or other ammunition." The trial court stated that it had been concerned about the conclusory nature of paragraph 15 of the affidavit, but after having read *Massey v. State*,[2] and considering the totality of the affidavit, had decided to deny the motion to suppress.

This case raises several issues. The warrant refers not to Appellant but to his brother, Jose Dominguez, as the suspect. All information in the supporting affidavit refers to Jose, not to Appellant. The initial question, then, is whether Appellant has standing to challenge the sufficiency of the affidavit supporting the warrant that authorized the search. Although the issue of standing was not raised below, we may address the issue and analyze standing, even though it is

---

[2]933 S.W.2d 141 (Tex. Crim. App. 1996).

not raised by either party, as part of the Fourth Amendment claim presented.[3]  It was uncontested that the residence searched pursuant to the warrant was Appellant's residence and belonged to his parents.  Additionally, the supporting affidavit states that Appellant resided in the house with Jose and their parents.  A person has a reasonable expectation of privacy in his own home, and, consequently, standing to challenge the search of his residence if the search was the source of evidence used in the prosecution.[4]  We hold that because Appellant had a reasonable expectation of privacy in his home, he had standing to challenge the search of the residence he shared with his family even though he is not the named suspect in the warrant.[5]

The affidavit supporting the search is extremely weak.  It contains conclusory statements with no explanations for why the affiant believed that the items listed as items he expected to find in the home would, indeed, be located there.  Appellant, however, did not identify the evidence that was seized pursuant to the warrant.  He did not indicate, either in his motion to suppress or in his brief, which specific evidence was seized as a result of the search and used to prosecute him (or which specific evidence he expected to be admitted into evidence or used to prosecute him absent his guilty plea).

---

[3]*See Kothe v. State*, 152 S.W.3d 54, 60 (Tex. Crim. App. 2004).

[4]*Id.* at 59.

[5]*See id.*

Relied on by the trial court to uphold the affidavit and warrant, *Massey* also stands for the proposition that when a defendant challenges the sufficiency of a warrant, the defendant must point to specific evidence seized pursuant to the complained of portion of the warrant or the affidavit and offered into evidence.[6] The *Massey* court relies on *Walthall*[7] in recognizing that, generally, "only evidence seized pursuant to offending portions of a warrant need be suppressed."[8] The *Massey* court then states, "It follows that when complaining of invalid portions of a search warrant, the defendant must identify the evidence seized pursuant to the allegedly invalid portions of the warrant."[9]

Although Appellant was ably represented by counsel at trial and on appeal, and although Appellant has filed an excellent brief on appeal, we cannot glean from either the motion to suppress or the appellate brief what specific evidence he complains was illegally seized. The firearm in question was not seized at his home. The magazine seized at his house was for the nine-millimeter Glock, not for the weapon with which Payne was shot. The name Sito was on his bedroom door, but it was also tattooed on his wrist. Appellant does not explain to us what

---

[6]*Massey*, 933 S.W.2d at 148.

[7]*Walthall v. State*, 594 S.W.2d 74, 79 (Tex. Crim. App. 1980).

[8]*Massey*, 933 S.W.2d at 148 (citing *Walthall*, 594 S.W.2d at 80).

[9]*Id.*

evidence was seized that prejudiced him, how it prejudiced him, or how it influenced his sentence.

We therefore overrule Appellant's sole point on appeal and affirm the trial court's judgment.

LEE ANN DAUPHINOT
JUSTICE

PANEL:  DAUPHINOT, WALKER, and GABRIEL, JJ.

WALKER and GABRIEL, JJ. concur without opinion.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  May 12, 2011

7